### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| ANTHONY STEVENS, SR.,<br>o/b/o D.S.,<br><br>Plaintiff,<br><br>v.<br><br>RITENOUR SCHOOL DISTRICT, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)    No. 4:22-CV-1181 JAR<br>)<br>)<br>)<br>) |

### MEMORANDUM AND ORDER

Before the Court is plaintiff, Anthony Stevens, Sr.'s response to the Order to Show Cause why this matter should not be dismissed due to his failure to exhaust his administrative remedies. Plaintiff filed the instant action alleging that defendants failed to provide his minor child ("D.S.") with a free appropriate public education ("FAPE"), in violation of the Individuals with Disabilities in Education Act ("IDEA"). After review of the record the Court finds that plaintiff is unable to represent his son in this action, thus any claims brought on behalf of his son are subject to dismissal. Additionally, plaintiff has failed to exhaust his administrative remedies with respect to his own claims brought pursuant to the IDEA. Accordingly, this action will be dismissed.

### Legal Standard

This Court is required to review a complaint filed in forma pauperis and must dismiss it if it is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*

*v. Twombly,* 550 U.S. 544, 570 (2007). Additionally, if the Court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

The Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### Background

Plaintiff, Anthony Stevens, Sr., filed the instant civil action under the Court's federal question jurisdiction against defendants, employees of Ritenour School District in St. Louis, on November 7, 2022. [ECF No. 1]. Plaintiff asserts that defendants failed to provide his minor child ("D.S.") with a free appropriate public education ("FAPE"). On February 17, 2023, the Court granted plaintiff's motion for leave to commence this action without prepayment of the filing fee. [ECF No. 4]. In that same Memorandum and Order, the Court directed plaintiff to show cause why this case should not be dismissed due to plaintiff's failure to exhaust his administrative remedies. Plaintiff filed a response to the Court's Order on March 6, 2023. [ECF No. 5]. He filed a supplemental response on March 22, 2023. [ECF No. 6]. The facts, as laid out *infra*, are taken from the civil complaint, as well as plaintiff's response briefs.

In plaintiff's complaint he asserts he is pursuing claims under the Fourteenth Amendment Equal Protection Clause, the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et seq*. and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. He claims that his son, D.S., a black fourth-grade student at Wylend School in the Ritenour School District, was subjected to "race discrimination" when he was taken from his fourth-grade class by the principal, Dr. Greenstein, after a conflict with other students and "placed in another classroom with first, second and third grade students." [ECF No. 1].

Plaintiff admits that his son was placed in a special education classroom. However, he states that he was not told that it was a special education classroom despite D.S. having an Individualized Education Plan (IEP). Plaintiff claims that not only was D.S. denied equal protection when he was taken from his classroom and placed in a new special education classroom, but he was also placed in the new classroom without the benefit of a hearing or meeting under his IEP.

Plaintiff alleges that prior to being moved to the special education classroom, D.S. was bullied and harassed in his fourth-grade classroom and his teacher, defendant Rossa failed to properly separate D.S. and protect him from his bullies. He asserts that rather than place the alleged bullies in the special education classroom, his son was placed in special education classroom that was supposed to be taught by his prior third-grade teacher, defendant Grunder. Although plaintiff claims that the placement of D.S. into the special education classroom was racially motivated, he acknowledges that the alleged bullies who were kept in the grade level were also black, like his son.

Plaintiff claims that he was told that D.S. would be provided fourth-grade work in his new classroom, however, "when they evaluated him, they found out he was doing second and third grade work and not prepared for the fifth-grade level." Plaintiff states that D.S. was "not given

3

fourth-grade work" and "he did not use fourth-grade books in the classroom they placed D.S. in."
Plaintiff believes that this was the fault of both defendant Grunder and Dr. Greenstein.[1]

D.S. was allegedly only supposed to be placed in the special education classroom for a
short time to "keep him away from the bullies to see if he would be comfortable in the class."
Plaintiff complains that Dr. Greenstein "refus[ed] to keep her agreement to. . .return him back if
he wasn't comfortable in being in the class." Plaintiff does not indicate when this alleged
agreement was made. Whether the agreement was part of an IEP, or an informal agreement.

Plaintiff believes D.S. was also "discriminated" against when D.S. got into a fight on the
playground with another black student and defendant Crossland attempted to stop the fight by
restraining D.S. by pulling his coat up over his arms and "press[ing] his thumbs into his arms
muscles until they became numb." Defendant Crossland walked D.S. to the principal's office and
told him, "This is for everyone's safety so you will not hurt anybody else." Crossland allegedly
told D.S., "You should not be hitting little girls."

Plaintiff states that he brought up defendant Crossland's actions at an IEP meeting on an
unnamed date and he was told that defendant Crossland was not trained to handle "IEP students."
Plaintiff alleges that Dr. Greenstein did not address the physical way defendant Crossland handled
D.S.[2]

Plaintiff additionally asserts that D.S. got into an altercation at his school on two separate
occasions with other students which involved spitting. Plaintiff complains that in the first instance,

---

[1]Plaintiff additionally alleges that Ms. Cox, another named defendant, did not prepare D.S. properly to go
to the fifth-grade level." There is no indication when Ms. Cox taught D.S. or for how long.

[2]Plaintiff also claims that Dr. Gunn, the Assistant Principal, "misjudged my son and walked out of an IEP
meeting." He does not indicate when this IEP meeting took place.

teachers on yard duty failed to use cameras to ascertain who spit first to see who should be punished.

In the second altercation, plaintiff complains that D.S. told him a white female student spit on him, and he spit on her back. D.S.'s teacher at the time, Ms. Damian, said the teachers saw D.S. spit on her but did not see her spit on him. As a result, D.S. was sent to the principal's office, and he was told to sit on a bench. Plaintiff states that the female student was sent to the nurse's office and then allowed to go back to her classroom until her parents could pick her up. Dr. Mueller, the Special Education Principal, called plaintiff to pick up D.S. and allegedly told plaintiff that if he picked up D.S. he would not be suspended. However, when plaintiff got to the school to get D.S., defendant Mueller provided plaintiff with a letter indicating that D.S. was suspended. Dr. Mueller indicated her decision had been overruled by Dr. Greenstein.

Last, plaintiff claims that D.S. was also "discriminated" against when he was suspended from his "assistance to ride" to and from school. D.S. claimed another black student was calling him names and threw a bag of candy at his eye. D.S. purportedly retaliated and "defend[ed] himself and hit the kid back." Plaintiff states that the school failed to contact the students' parents or the IEP team to address the situation.

On February 17, 2023, the Court granted plaintiff's motion to proceed in forma pauperis and reviewed plaintiff's complaint as required pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and for failure to state a claim. [ECF No. 4]. The Court found that although plaintiff, D.S.'s father, had standing to bring his own claims under the IDEA in this matter, he was not entitled to represent D.S. pro se under the IDEA, or under Title VI or 42 U.S.C. § 1983 (for his Fourteenth Amendment claims). *See, e.g., Winkelman ex rel. Winkelmann v. Parma City Schl. Dist.,* 550 U.S. 516, 530-32 (2007); *see also, Crozier for A.C. v. Westside Community School*

5

*District*, 973 F.3d 882, 887 (8th Cir. 2020) and *Jianjun Xie v. Oakland Unified School District*, No. C 12–02950 CRB, 2013 WL 812425, \*3 (N.D. Cal. March 5, 2013). Accordingly, the Court found that any and all claims brought on behalf of D.S., were subject to dismissal.[3]

Additionally, the Court noted that plaintiff's claims under the IDEA did not appear to have been properly exhausted through the Missouri State Educational process. Thus, on February 17, 2023, plaintiff was ordered to show cause, no later than March 19, 2023, why this action should not be dismissed due to plaintiff's failure to exhaust his administrative remedies. [ECF No. 4].

Plaintiff filed a response to the Order to Show Cause on March 6, 2023. [ECF No. 5]. In his response brief, plaintiff did not contest that he lacked standing to bring this action on behalf of his son. Instead, plaintiff argues that he should not have to exhaust his administrative remedies with respect to his claims under the IDEA because:

> he was not advised of his rights to appeal the decisions made by the IEP team on his son's educational problems with teachers, and students who bullied him, not getting home work on his grade level, being placed in another classroom without permission by the IEP team, experienced disparate treatment against students who were similarly situated as his son to exhaust administrative remedies, and did not have counsel to advise him of his rights to appeal. . .

[ECF No. 5].

Plaintiff also advances two new causes of action in his response brief that are not included in his complaint. He claims that defendants failed to provide him with "an appeals process" notice and that defendant Greenstein engaged in a breach of contract and negligence in failing to return D.S. to his four-grade classroom. Plaintiff may not attempt to plead new claims in his response to the Order to Show Cause. *Morgan Distrib. Co. v. Unidynamic Corp.,* 868 F.2d 992, 995 (8th Cir. 1989) (pointing out that a responsive brief is neither the time nor the place to raise a new claim).

---

[3]Moreover, only school districts and state educational agencies may be held liable under the IDEA. 20 U.S.C. §§ 1415(a), (i)(2)(a); *see also Gill v. Columbia 93 Sch. Dist.,* 217 F.3d 1027, 1035 (8th Cir. 2000). Thus, the individual defendants cannot be held liable by plaintiff under the IDEA in this action.

6

Plaintiff also filed a supplement to his response brief on March 22, 2023. [ECF No. 6]. In the supplemental brief plaintiff argues that a new Supreme Court case, *Perez v Sturgis Public Schools*, 143 S.Ct. 859 (2023), supports his contention that he is not required to exhaust his administrative remedies prior to suing in Federal District Court.[4] The Court finds plaintiff's assertions unavailing as applied in this case.

### Discussion

Plaintiff, Anthony Stevens, Sr., filed this action under the Court's federal question jurisdiction alleging that defendants, employees of Ritenour School District in St. Louis, failed to provide his minor child ("D.S.") with a free appropriate public education ("FAPE."). On February 17, 2023, the Court granted plaintiff's motion to proceed in forma pauperis and reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and for failure to state a claim. [ECF No. 4]. The Court found that although plaintiff, D.S.'s father, had standing to bring his own claims under the IDEA in this matter, he was not entitled to represent D.S. pro se under

---

[4]In *Perez*, the Supreme Court held that a suit "admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes *if the remedy a plaintiff seeks is not one IDEA provides*." *Id.* at 865 (emphasis added). In this litigation, plaintiff seeks $75,000 for "compensatory damages for mental anguish pain and suffering. . . D.S. would wake up nights," $75,000 for undetermined punitive damages, $75,000 for "compensatory damages for race discrimination against D.S.," $75,000 for punitive damages for race discrimination and $100,000 compensatory damages for child brutality for Mr. Crossland manhandling a 10-year-old minor." As noted above, the claims on behalf of D.S. are subject to dismissal, including all claims under the IDEA, 42 U.S.C. § 1983, Title VI and under the Fourteenth Amendment. And only plaintiff's claims on his own behalf under the IDEA survive. It does not appear that plaintiff has articulated a request for damages under the IDEA in his complaint, therefore plaintiff is subject to statutory damages as enumerated under the Act. The Court therefore does not believe that plaintiff's allegations in the complaint are comparable to the claims in *Perez*. In *Perez*, the plaintiff fully resolved his administrative complaint under the IDEA, obtained all forward-looking equitable relief he requested (including additional schooling), and later, in an independent action, unambiguously sought "backward-looking relief in the form of compensatory damages" under the Americans with Disabilities Act. 143 S. Ct. at 862. It is unclear from plaintiff's complaint whether he seeks compensatory or punitive damages under the IDEA—a form of relief not available under the IDEA—or some other form of relief like a compensatory education, reimbursement, or equitable relief like expungement of D.S.'s disciplinary record—all remedies available under the IDEA, and therefore subject to its exhaustion requirement.

the IDEA, or under Title VI or 42 U.S.C. § 1983 (the Fourteenth Amendment). *See, e.g.,
Winkelman*, 550 U.S. at 530-32; *see also, Crozier*, 973 F.3d at 887 and *Jianjun*, No. 2013 WL
812425 at 3. Accordingly, the Court found that any and all claims brought on behalf of D.S., were
subject to dismissal. Plaintiff's claims against the individual defendants in this action are also
subject to dismissal. *See supra*, FN. 3.

The Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.,* is a statute that
offers federal funding to states for the education of children with disabilities. *See, e.g., Endrew F.
ex rel. Joseph F. v. Douglas Cnty. Sch. Dist.* RE-1, 137 S. Ct. 988, 993 (2017). "In exchange for
the funds, a state pledges to comply with a number of statutory conditions." *Id.* The primary
condition is that the participating state provide a "free appropriate public education," or FAPE, to
all eligible children. *Id.* (citing 20 U.S.C. § 1412(a)(1)). The IDEA does not mandate what a FAPE
must substantively include beyond a few basic minima, most obviously that the education be
provided under public supervision and without charge. *See* 20 U.S.C. § 1401(9)(A) (partial
definition of FAPE). The substance of a FAPE is primarily defined to be such "special education
and related services" that "are provided in conformity with [a child's] individualized education
program," or IEP. 20 U.S.C. § 1401(9)(D); *see also* 20 U.S.C. § 1414(d)(1)(A) (defining IEP); 20
U.S.C. § 1401(29) (defining special education); *Fry v. Napoleon Cmty. Schs.,* 137 S. Ct. 743, 749
(2017).

The Court set forth the background of the IDEA and its procedural safeguards for special
education programs, parents and children with special needs in its February 17, 2023
Memorandum and Order. [ECF No. 4]. The salient issue in this action is the exhaustion
requirement contained in the statute.

Under the IDEA, any aggrieved party may "present a complaint ... with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). The party may elect to have the complaint investigated by the state educational agency, *see* 34 C.F.R. § 300.661, or avail itself of an "impartial due process hearing," 20 U.S.C. § 1415(f). Any party aggrieved by the outcome of the due process hearing "shall have the right to bring a civil action with respect to the complaint presented ... in a district court of the United States, without regard to the amount in controversy." *Id.* § 1415(i)(2)(A). This action must be initiated within ninety (90) days from the date of the hearing officer's decision. *Id.* § 1415(i)(2)(B). The district court is authorized to grant "such relief as the court determines is appropriate," including attorneys' fees, reimbursement for a private educational placement, and compensatory education. See *id.* § 1415(i)(3)(B)(i).

Plaintiff asserts that he should not have to exhaust his administrative remedies with respect to his claims under the IDEA because he was not advised of his right to appeal: (1) the decisions made by the IEP team; (2) the decisions made in relation to his son's educational problems with teachers; (3) the decisions made by the school relating to the alleged bullying of D.S.; (4) the decisions made with relation to D.S. not getting homework at his grade level; and (5) the purported decision to place D.S. in a classroom without permission of the IEP team.

First, as set forth above, it appears that plaintiff is attempting to assert a new cause of action with respect to a procedural violation of the IDEA in his response brief which is not allowed in this Circuit. *Morgan*, 868 F.2d at 995.

Second, plaintiff's assertions are conclusory and unsupported by factual assertions. Thus, when plaintiff states that he was not advised his right to appeal "decisions by the IEP team," he

does not articulate which decisions of the IEP team he was not advised of his right to appeal. Similarly, he does not indicate which decisions made by the school relating to his son's purported bullying and educational problems that he was not advised of his right to appeal.

Regardless, plaintiff has not properly alleged that these procedural violations significantly impeded his opportunity to participate in the decision-making process regarding the provision of a FAPE to D.S., seriously hampered plaintiff's opportunity to participate in the formulation process of the IEP or caused a deprivation of D.S.'s educational benefits. *See Park Hill Sch. Dist. v. Dass*, 655 F.3d 762, 766 (8th Cir. 2011). [5]

Additionally, plaintiff has not alleged what IDEA provisions the school district purportedly violated when it failed to give him notice of these alleged provisions. Allowing for leniency in interpreting a complaint filed by a pro se plaintiff, it appears that he is claiming that §1415 (d)(1)(A) of the IDEA was violated. That section provides, "A copy of the procedural safeguards available to the parents of a child with a disability shall be given to the parents only 1 time a year, except that a copy also shall be given to the parents-- (i) upon initial referral or parental request for evaluation; (ii) upon the first occurrence of the filing of a complaint under subsection (b)(6) of this section; and (iii) upon request by a parent." 20 U.S.C.A. § 1415 (d)(1)(A). The educational

---

[5] The IDEA provides relief only for the denial of a FAPE, not for the denial of a procedural right. *Cf. Fry,* 137 S. Ct. at 755 ("[T]he only relief the IDEA makes available is relief for the denial of a FAPE."). However, a procedural violation can rise to the level of a deprivation of a FAPE when the procedural violation either:

    (I)      impeded the child's right to a free appropriate public education;

    (II)    significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child; or

    (III)   caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii)); 34 C.F.R. § 300.513(a)(2).

agency may also "place a current copy of the procedural safeguards notice on its Internet website if such website exists." *Id.* § 1415 (d)(1)(B).

Although certain courts have held that exhaustion is not required if plaintiffs were not given full notice of their procedural rights under the IDEA, *see, e.g., Covington v. Knox County School System*, 205 F.3d 912, 917 (6th Cir. 2000), the burden of demonstrating futility or inadequacy rests on the party seeking to bypass the administrative procedures. *Id.* (citing *Honig v. Doe,* 484 U.S. 305, 327 (1988)). Plaintiff has failed to meet that burden in this instance.

Because plaintiff has failed to exhaust his administrative remedies with respect to his IDEA claims and he has failed to meet the burden of demonstrating futility or inadequacy of the administrative procedures such that he should not have to exhaust, the Court will dismiss this action, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's claims, on behalf of his son, D.S., brought pursuant to the IDEA, Title VI of the Civil Rights Act of 1964, the Fourteenth Amendment Equal Protection Clause and 42 U.S.C. § 1983 are **DISMISSED** as plaintiff is unable to represent D.S. in this action.

**IT IS FURTHER ORDERED** that plaintiff's claims brought pursuant to the IDEA are **DISMISSED** due to plaintiff's failure to exhaust his administrative remedies with respect to these claims.

11

**IT IS FURTHER ORDERED** that an appeal from this Order would not be taken in good faith.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 24th day of May, 2023.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE